STATE of Minnesota, Appellant,

v.

John Allen GARD, Respondent/Cross Appellant.

No. C6-84-1162.

Court of Appeals of Minnesota.

Nov. 27, 1984.

464

Hubert H. Humphrey, III, Atty. Gen., Stephen C. Rathke, Crow Wing County Atty., Brainerd, for appellant.

Harold R. Fritz, II, Nisswa, for respondent/cross appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Respondent John Gard was charged with two counts of criminal sexual conduct. The state appeals a pretrial order suppressing statements made by the respondent during the course of an investigation interview. The trial court ordered suppression after finding the officer gave certain representations to respondent that rendered the statements involuntary and coerced. We affirm.

## FACTS

On February 13, 1984, Julie Steiff of the Northern Pines Mental Health Center informed Crow Wing County Deputy Sheriff David Bjerga that two juvenile girls told her their uncle John Gard had sexually abused them on a number of occasions. Deputy Bjerga and a social worker talked to the girls on February 23. They described numerous acts which, if true, constituted criminal sexual conduct in violation of Minnesota statutes.

On February 24, 1984, at about 1:30 p.m., Bjerga went to respondent's place of employment and asked to speak with him outside. Bjerga did not intend to arrest respondent. He was going to speak with him in reference to accusations made by the two girls. Bjerga, not in uniform, identified himself as a deputy and informed respondent of the nature of the investigation.

The 30-minute conversation took place in the front seat of Bjerga's unmarked squad car. Bjerga did not give respondent a *Miranda* warning before questioning him.

Deputy Bjerga told respondent that he was not under arrest and that he was free to terminate the conversation at any time and leave. He further explained that several options were open and that "just because he talks to me doesn't necessarily mean he is going to face jail." Bjerga indicated that "if charges are brought, counseling could be a part of the court's disposition." At the omnibus hearing, Bjerga stated that he made no promises to respondent and told him that after the investigation was completed the matter would be turned over to the county attorney for further handling.

Respondent testified that Bjerga told him that no criminal charges would be brought and that all there would be was counseling. He also testified that Bjerga assured him the matter would not go to court. Respondent claimed that, based on his understanding of Bjerga's representations, he confessed to sexually abusing the two girls "because he told me it would all be counseling." After the conversation was over, respondent went back to work and Bjerga went on his way.

The State stipulated that Deputy Bjerga had probable cause to arrest respondent at the time of the interrogation and chose not to do so. Bjerga testified that the sheriff's department policy requires a complete investigation of sex crimes before the matter is referred for prosecution and that the defendants are ordered to appear in court rather than subjected to arrest. Within the following month, Bjerga interviewed several persons with knowledge relating to the sexual conduct, as part of a continuing investigation. A warrant was issued for respondent's arrest on April 10, 1984. Bjerga notified respondent's attorney, and respondent appeared in county court on April 30, 1984.

Respondent was charged with two counts of criminal sexual conduct. At the omnibus hearing, he moved to suppress the oral

statements made to Deputy Bjerga. The trial court suppressed the statements because "they were obtained as the result of a planned systematic, selective set of representations of defendant's rights that rendered the taking of said statements involuntary and coerced."

## ISSUES

1. Was the officer required to give respondent a *Miranda* warning before the questioning?

2. Did respondent voluntarily confess to the criminal sexual conduct?

3. Was the officer required to arrest respondent as soon as probable cause was established?

## ANALYSIS

■ The Minnesota Supreme Court in *State v. Webber*, 262 N.W.2d 157 (Minn. 1977), held that in a pretrial appeal from an order suppressing evidence in a criminal case, the trial court's ruling will be reversed only "if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *Id.* at 159.

■ Reviewing the record, we find the trial court within its discretion in suppressing the oral confession because of its involuntary nature. It was not patently unreasonable for the judge to interpret the facts in this manner. On review appellate courts "will not reverse any findings of fact unless they are clearly in error, but * * * will make an independent determination of voluntariness on the facts as found." *State v. Hardimon*, 310 N.W.2d 564, 567 (Minn. 1981); *see State v. Ulvinen*, 313 N.W.2d 425, 428 (Minn.1981) (standard for sufficiency of the evidence).

### I.

*Miranda*

■ The constitutional requirements set forth in *Miranda v. Arizona*, 384 U.S. 436,

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), require that a defendant be given certain warnings before statements he makes stemming from a "custodial interrogation" can be used against him. A *Miranda* warning is necessary only "when an individual is taken into custody or otherwise deprived of his freedom of action in any significant way and is subjected to questioning * * *." *Id.* at 478, 86 S.Ct. at 1624–25. Respondent must show that he was subjected to custodial interrogation while in the police car before a *Miranda* warning is required.

This court has held that a *Miranda* warning was not required for noncustodial questioning of a crime suspect at his home. *State v. Larson*, 346 N.W.2d 199 (Minn.Ct. App.1984). In *Larson*, the trial court suppressed statements made while the police were investigating a burglary. This court reversed and held that the suspect was not entitled to a *Miranda* warning because the interrogation was not custodial. *Id.* at 202. The suspect had not been arrested, and the presence of uniformed officers was not enough of a restraint on his freedom of movement to bring the questioning under *Miranda*. *Id.* at 201.

The Minnesota Supreme Court in *City of Burnsville v. Marsyla*, 349 N.W.2d 829 (Minn.1984), which involved facts similar to this case, held that no *Miranda* warning was required before questioning the suspect because the interrogation was noncustodial. In *Marsyla*, a police detective obtained information that Marsyla unlawfully entered a Burnsville residence and took certain items of personal property. Three days later the detective approached Marsyla at his residence, identified himself and explained why he wanted to talk with Marsyla. The officer specifically informed Marsyla that he was not going to give him a *Miranda* warning, that Marsyla was not under arrest, and that Marsyla was free to leave at any time if he wanted to do so. Marsyla acknowledged that he understood and proceeded to make inculpatory statements. The conversation took place in the detective's car in the driveway. The court

held that the interrogation in the police car outside his residence was not custodial; therefore, the officer was not required to give Marsyla a *Miranda* warning.

■ Our examination of the record in this case satisfies us that the deputy did not violate respondent's rights by not giving him a *Miranda* warning. On February 24, 1984, Deputy Bjerga approached respondent at his place of employment, identified himself and explained the nature of the investigation. Although the interrogation of respondent occurred in Bjerga's squad car, respondent came there voluntarily, knowing that he was under no legal compulsion to do so. No firearms or guns were displayed, and the passenger door remained unlocked. Bjerga informed respondent that he was not under arrest and that he could stop the interview at any time. Respondent was also told before the interrogation began that he was free to leave, but he chose not to do so. Respondent was neither taken into custody nor significantly deprived of his freedom of action. Under the circumstances, this questioning was noncustodial, and therefore no *Miranda* warning was required.

## II.

### Involuntariness

■ The trial court suppressed statements respondent made in the police car because they were found to be involuntary and coerced. The due process clause of the fourteenth amendment requires that confessions be admitted only if they are made voluntarily. *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1342–43, 10 L.Ed.2d 513 (1963); *State v. Biron,* 266 Minn. 272, 280, 123 N.W.2d 392, 398 (1963). To determine the voluntariness of a confession, the court must examine the totality of the circumstances. *Haynes,* 373 U.S. at 513, 83 S.Ct. at 1342–43; *Biron,* 266 Minn. 272, 282, 123 N.W.2d 392, 399. One test is "whether the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963). "In short, the true test of admissibility is that the confes-

sion is made freely, voluntarily and without compulsion or inducement of any sort." *Wilson v. United States,* 162 U.S. 613, 623, 16 S.Ct. 895, 899, 40 L.Ed. 1090 (1896).

■ The United States Supreme Court stated that while the failure to give a *Miranda* warning is not in itself coercive, a failure to warn is "relevant only in establishing a setting in which actual coercion might have been exerted." *Procunier v. Atchley,* 400 U.S. 446, 553–54, 91 S.Ct. 485, 523–24, 27 L.Ed.2d 524 (1971). This court recently stated that confessions need not be in a custodial setting to be involuntary. *State v. Jensen,* 349 N.W.2d 317, 320 (Minn.Ct.App.1984); *see also State v. Raymond,* 305 Minn. 160, 232 N.W.2d 879 (1975) (affirming the suppression of a confession obtained during a noncustodial interrogation). In *Jensen,* we quoted the Minnesota Supreme Court in *State v. Merrill,* 274 N.W.2d 99, 106 (Minn.1978), which stated:

> Whether an accused has waived his right to remain silent and whether he has confessed voluntarily are two separate issues. It is possible that an accused might waive his right to remain silent by expressly stating that he is willing to answer questions, and yet, by improper police tactics, be coerced into giving an involuntary confession.

*Jensen,* 349 N.W.2d at 320.

■ Numerous factors bear on the determination of whether a confession is voluntary, including (1) the age, maturity, intelligence, education and experience of the defendant and the ability of the defendant to comprehend; (2) the lack of or adequacy of warnings; (3) the length and legality of the detention; (4) the nature of the interrogation; (5) whether the defendant was deprived of any physical needs; and (6) whether the defendant was denied access to friends. *State v. Linder,* 268 N.W.2d 734, 735–36 (Minn.1978).

■ Respondent contends the State utilized techniques designed to take advantage of his lack of education, lack of intellect, fear of the judicial system, and fur-

ther promised, or at least insinuated, that criminal conduct might not be charged. The State argues that although treatment and other options were discussed during the interrogation in the police car, such options do not render the confession inadmissible. In *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), the United States Supreme Court stated that a voluntary confession is one "not * * obtained by any direct or implied promises, however slight." In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Court pointed out that in *Bram,* "even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." 397 U.S. at 754, 90 S.Ct. 1463.

The Minnesota Supreme Court in *State v. Jungbauer,* 348 N.W.2d 344 (Minn.1984), rejected a contention that the defendant's confession was improperly obtained by a promise to release him pending formal charging and to seek only his summons instead of an arrest warrant. The court stated:

> *Police should not make promises, implied or expressed, in order to encourage a defendant to confess.* However, * * * the making of a promise by police does not automatically render any confession obtained thereby involuntary. Rather, we must look to all the circumstances and consider all the factors bearing on voluntariness. Doing that, and bearing in mind that defendant had two prior felony convictions; that he had been advised of his rights and had previously exercised his right to silence; that he was not subjected to any kind of prolonged interrogation or threats; and that the promise was not the sort of promise that might tempt an innocent person to confess; we conclude that defendant's confession was voluntary.

*Id.* at 346–47 (emphasis added).

Although the confession in *Jungbauer* was found to be voluntary under the totali-

ty of the circumstances, a review of the record in this case shows that the circumstances justify the trial court's finding that respondent's confession was not voluntary. Here, Deputy Bjerga had probable cause to arrest respondent at the time of the interrogation. Bjerga also knew that he was "after criminal sexual conduct," and consciously decided not to advise respondent of his constitutional rights. While the record is unclear regarding respondent's intelligence and education, the record does show that he is currently 30 years old and unable to read. These factors weigh against the State when examining the totality of the circumstances. The issue of whether Bjerga made promises is not clear, but the issue of whether he made oral representations that could reasonably be construed as promises to induce a confession is clear: he did. Bjerga indicated that several options were available to respondent and that just because he talked to him did not necessarily mean that he would go to jail. Bjerga's extension of several alternative dispositions including "counseling," as opposed to "jail" or prosecution, implied that no criminal charges would be brought if respondent confessed. What may have seemed a casual statement to Bjerga could easily have seemed like a promise to respondent. Considering that intrafamilial sexual misconduct was the focus of the investigation, any suggestion of lenience had a heavy impact on respondent. On these facts respondent could reasonably have believed that his statements would not be used against him if he agreed to talk to the deputy. Viewing the totality of the circumstances, we do not disturb the trial court's discretion in suppressing the statements.

### III.

#### Right to arrest

■■■ Respondent contends that, after having sufficient evidence to arrest him, the police officer delayed his arrest in order to obtain incriminating statements. The claim is without merit, for the United

States Supreme Court has stated there is no constitutional right to be arrested. *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966). The court explained that "[l]aw enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." *Id.* at 310, 87 S.Ct. at 417.

 Under Crow Wing County guidelines enacted by the sheriff's department and county attorney's office, cases involving criminal sexual conduct require a complete investigation and are then referred to the county attorney for a charging decision. If the county attorney chooses to prosecute, the defendants are ordered to appear in court rather than being immediately subject to arrest. Under these circumstances, Deputy Bjerga was not required to halt his investigation and immediately arrest respondent.

### IV.

*Critical impact*

The State's final contention is that the exclusion of the confession will have a critical impact on the trial. We note that the omnibus hearing was consolidated with *State v. Ricky Gard*, a companion case which involved a nephew of respondent accused of sexually abusing the same two girls. Although the trial court also suppressed oral statements made by defendant Ricky Gard, he has since been tried by a jury and convicted of criminal sexual conduct. However, we need not consider the "critical impact" since we are satisfied that the trial court's decision to suppress the confession on the basis of involuntariness is not clearly erroneous.

### DECISION

The district court's order granting the motion for suppression of statements given by the defendant is affirmed.

Affirmed.

FORSBERG, Judge, dissenting:

I respectfully dissent. I do not agree that the statements were coerced or involuntarily made.