STATE of Minnesota, Plaintiff,

v.

Darold John GROSS, Defendant.

No. C2-83-80.

Supreme Court of Minnesota.

July 1, 1983.

John H. Erickson, Brainerd, for plaintiff.

Hubert H. Humphrey III, Atty. Gen., Norman B. Coleman and Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, Stephen C. Rathke, County Atty., Brainerd, for defendant.

AMDAHL, Chief Justice.

Defendant is being prosecuted in district court on a gross misdemeanor charge of aggravated DWI, Minn.Stat. § 169.121, subd. 3 (1982). The trial court denied a motion by defendant to suppress evidence of the result of a breath test indicating that defendant's blood alcohol concentration at the time of the arrest was .14%, and the court also denied a motion to dismiss. However, acting pursuant to Minn.R. Crim.P. 29.02, subd. 4, the trial court has certified a number of issues to this court as being important and doubtful: (1) whether evidence of the result of the breath test taken pursuant to the implied consent law must be suppressed because (a) defendant was not given a *Miranda* warning, (b) the state did not prove that the police had complied with the implied consent law, or (c) the state destroyed the test and control ampoules used in analyzing defendant's breath, and (2) whether defendant's prosecution is barred on the ground that the aggravated DWI statute is an impermissible *ex post facto* law. We affirm the trial

court's order denying both the motion to suppress and the motion to dismiss, and we remand for trial.

■ 1(a). The first issue is whether the evidence of the test result should be suppressed because the police failed to give defendant a *Miranda* warning before they advised him of the provisions of the implied consent law and administered the breath test. In *Prideaux v. State,* 310 Minn. 405, 247 N.W.2d 385 (1976), we interpreted Minn.Stat. § 481.10 (1982) as giving a person a limited right to consult with counsel before deciding whether to submit to blood alcohol testing under the implied consent law. Minn.Stat. § 169.123, subd. 2(b)(3) (1982), provides that police must advise a person of this right as part of the standard implied consent advisory. However, we have never held that police must give a *Miranda* warning to a person before they give an implied consent advisory. Indeed, our decision in *State v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971), counsels against this. In any event, the issue is now settled because in *South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983),[1] the United States Supreme Court stated:

In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda.* As we stated in *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), police words or actions "normally attendant to arrest and custody" do not constitute interrogation. The police in-

quiry here is highly regulated by state law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection. See generally Arenella, *Schmerber and the Privilege Against Self-Incrimination: A Reappraisal,* 20 Am.Crim.L.Rev. 31, 56–58 (1982).

In conclusion, we hold that the trial court correctly decided that the failure of the police to give defendant a *Miranda* warning before they advised him of the provisions of the implied consent law does not require suppression of the evidence of the results of the breath test to which defendant submitted.[2]

■ (b) The issue concerning whether the police complied with the implied consent law is controlled by prior decisions of this court holding that the only advisory that police are required to give a person under the implied consent law is that mandated by statute. *See, e.g., State v. Abe,* 289 N.W.2d 158 (Minn.1980).

■ (c) The last of the three main issues raised by defendant with respect to the trial court's decision of the suppression motion relates to the destruction by police of the ampoules, particularly the test ampoule, used in analyzing defendant's breath. In this case the control ampoule was put back with the other control ampoules for reuse and the test ampoule, which had been

---

**1.** The *holding* in the *Neville* case was "that a refusal to take a blood-alcohol test, after a police officer has lawfully requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination." 103 S.Ct. at 923 (footnote omitted). In *State v. Willis,* 332 N.W.2d 180 (Minn.1983), this court, with three justices disagreeing, avoided deciding the issue of whether the Minnesota Constitution should continue to be interpreted as barring evidence of a refusal to submit to testing. *See State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974). Even if it is true, as we held in *An-*

*drews,* that a refusal to test gives rise to an inference of guilt, it does not follow logically that police must give a person a *Miranda* warning before advising the person of the provisions of the implied consent law.

**2.** The trial court did suppress a statement defendant made in response to a prearrest, precustodial interrogation of defendant concerning how much alcohol he had consumed. The correctness of this ruling is not before us. As to the general inapplicability of *Miranda* to questioning during an investigatory stop, see *In re the Welfare of M.A.,* 310 N.W.2d 699 (Minn. 1981).

opened, was thrown away, as they usually are.

For a full discussion of the operation of the Breathalyzer brand breath testing machine, see *State v. Habisch,* 313 N.W.2d 13 (Minn.1981).

There is case law on both sides of the issue of whether the ampoules used in breath testing should be preserved. *Compare People v. Hitch,* 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (1974) (requiring preservation of the ampoules) *with State v. Bush,* 595 S.W.2d 386 (Mo.App.1980) (allowing destruction of the ampoules). Apparently the majority of courts that have addressed the issue have held that the ampoules need not be preserved.

The trial court relied, in part, upon a 1975 resolution by the Executive Board of the Committee on Alcohol and Drugs, National Safety Council, which stated that "a scientifically valid procedure is not known to be available for the reexamination of a Breathalyzer ampoule that has been used in the breath test * * * in order to confirm the accuracy and reliability of the original breath analysis." Formal Statement of Committee on Alcohol and Drugs, National Safety Council, Chicago, Ill., Oct. 2, 1975, *quoted in* Finkle, *Alcohol and Traffic Safety,* 3 Am.J.Forensic Med. & Pathology 273, 273 (1982).

Defendant has failed to establish that the evidence which was destroyed was material evidence. Under the circumstances, we hold that the trial court properly refused to suppress the evidence of the test result on this ground.

2. Defendant's other contention, that the aggravated DWI statute is an impermissible *ex post facto* law, is answered in the negative by our recent decision in *State v. Willis,* 332 N.W.2d 180, 185 (Minn. 1983).

Remanded for trial.