STATE of Minnesota, Respondent,

v.

Randy Allen SLETTE, Appellant.

No. C3–98–416.

Court of Appeals of Minnesota.

Oct. 6, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul; and JoLana F. Sonntag, Office of the Brainerd City Attorney, Brainerd, for respondent.

John G. Westrick, Westrick & McDowall–Nix, P.L.L.P., St. Paul; and Robert D. Miller, Robert D. Miller & Associates, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and KLAPHAKE and SHUMAKER, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant argues that the results of his blood alcohol test should have been suppressed. Because officers violated appellant's right to counsel by failing to provide appellant with a telephone to contact an attorney or to clarify appellant's request, we reverse and remand.

## FACTS

Randy Allen Slette appeals his conviction for driving while under the influence (DWI). He pleaded guilty based on the following stipulated facts, preserving the suppression issue for appeal.[1]

On June 4, 1997, after a three-car motor vehicle accident, police arrested appellant on suspicion of DWI and took him to the Crow Wing County Law Enforcement Center. Officers there read appellant the Implied Consent Advisory. When asked if he wanted to consult with an attorney before testing, appellant declined. Therefore, police did not provide appellant with a telephone and instead started to prepare the Intoxilyzer machine for testing. A few minutes later, as officers were explaining appellant's rights under the Data Practices Act and before testing had begun, the following exchange occurred:

[Appellant]: Hey, back up.

Officer B: Uh-huh.

[Appellant]: You know, maybe I should get an attorney before I take that test; think so?

Officer B: You know, it's up to you.

[Appellant]: I got a pretty good attorney.

Deputy B: I can't give you legal advice.

[Appellant]: I mean I want to get out of this thing -

Deputy B: But if you refuse the test, that's considered a crime, also, that's another crime; do you understand that?

[Appellant]: Yeah, but—this whole thing's a crime, you know? I should have been able to get my—call somebody to take my truck out of there.

Deputy B: Yeah.

[Appellant]: Maybe I should.

Officer B: Well, you agreed to the test already, you know, at this point. What are you going to do?

It's not going to change the outcome of what we're going to do tonight, what I just explained to you; I'll tell you that right now. It's not going to change, you know, the outcome of what's going to happen to you in the next six, six, to eight hours.

[Appellant]: It's not, huh?

Deputy B: No. No, you're here for the night.

[Appellant]: Well, I guess that doesn't matter that much.

The officers did not make a telephone available to appellant to contact counsel before testing, and appellant submitted to an Intoxilyzer test that showed a .16 result.

Subsequently, appellant moved to rescind the revocation of his license, and the district court granted that motion, ruling that officers violated appellant's right to counsel by failing to make a telephone available to him when he expressed an interest in calling his lawyer. In a separate criminal proceeding

---

1. It is clear from the sentencing transcript that the parties viewed the suppression issue as determinative of appellant's guilt and that they meant to follow the procedures outlined in *State v. Lothenbach* to preserve the suppression issue for appeal. However, the proper procedure is a court trial on stipulated facts. *Id.*, 296 N.W.2d 854, 857 (Minn.1980) (defendant wishing to preserve constitutional issue for appeal may waive right to jury trial, then stipulate to prosecution's case).

before a different district court judge, appellant moved to suppress the state's test results, relying on the rescission order and the videotape and transcript of his booking. The district court denied appellant's motion to suppress, ruling that appellant's right to counsel was not violated because appellant failed to clearly and unequivocally invoke his right.

## ISSUE

Did police violate appellant's right to counsel under *Friedman v. Commissioner of Public Safety?*

## ANALYSIS

When facts are undisputed, we review de novo to determine whether a defendant's right to counsel was violated. *State v. Christiansen,* 515 N.W.2d 110, 112 (Minn. App.1994), *review denied* (Minn. June 15, 1994). Under the Minnesota Constitution, DWI arrestees have the limited right to consult with counsel before deciding whether to comply with the statutory requirement of implied consent testing. *Davis v. Commissioner of Pub. Safety,* 517 N.W.2d 901, 902 (Minn.1994) (citing *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 837 (Minn.1991)). This limited right is vindicated if a DWI arrestee "is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." *Friedman,* 473 N.W.2d at 835 (citing with approval *Prideaux v. State,* 310 Minn. 405, 422, 247 N.W.2d 385, 395 (1976)).

Appellant initially waived his right to contact counsel. Nevertheless, officers should recognize the withdrawal of a DWI arrestee's initial waiver of the right to consult with counsel when the change of mind is immediate and does not interfere with police officers' processing of a case or their ability to administer an Intoxilyzer test. *Cf. Parsons v. Commissioner of Pub. Safety,* 488 N.W.2d 500, 503 (Minn.App.1992) (dicta encouraging officers to be flexible and disregard refusal to test that is promptly withdrawn); *Schultz v. Commissioner of Pub. Safety,* 447 N.W.2d 17, 19 (Minn.App.1989) (holding appellant not bound by initial refusal to test where he communicated immediate

change of mind that did not interfere with officer's processing of case). The district court's refusal to recognize appellant's change of mind was error under the facts of this case.

The district court relied on *State v. Williams,* 535 N.W.2d 277 (Minn.1995), where the supreme court held that a defendant's nonverbal act of walking out of an interrogation room was not a clear and unequivocal request for counsel. *Id.* at 285. Unlike the defendant in *Williams,* however, appellant's expression was not limited to ambiguous nonverbal communication. Instead, appellant expressed an interest in consulting with counsel. Neither are we persuaded by respondent's reliance on *State v. Von Bank,* 341 N.W.2d 894 (Minn.App.1984), in which this court held that a DWI defendant's right to counsel was not violated when she responded "don't know" when asked if she wanted to consult with an attorney, and responded "I suppose" when asked if she would give a breath sample. *Id.* at 895–96. The exchange between appellant and police here is sufficiently different from the facts in *Von Bank* to distinguish that holding.

Even if appellant's request was unclear, the officer's response indicates that he understood appellant was changing his mind and desired to consult with counsel. "Well, you agreed to the test already, you know, at this point. What are you going to do?" Without waiting for appellant to clarify his request and inferring that appellant wanted to speak with an attorney, the officer then tried to talk appellant out of consulting with an attorney. "It's not going to change the outcome of what we're going to do tonight, what I just explained to you, * * *."

"An attorney, not a police officer, is the appropriate source of legal advice" when a driver is asked to submit to a chemical test. *Friedman,* 473 N.W.2d at 833. A core purpose of the right to counsel is to assure assistance "when the accused [is] confronted with * * * the intricacies of the law." *United States v. Ash,* 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). Here, after having been read the implied consent advisory and then being informed of his Data

Practices rights, appellant was confronted with the intricacies of the law and decided that maybe he needed to consult with counsel. Rather than vindicating that right by providing appellant with a telephone and the reasonable opportunity to consult with counsel, the officer's response coerced appellant into testing.

Even if appellant's request is ambiguous, suppression is still required under these facts. In the context of the limited right to counsel established by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), police must either clarify an ambiguous request for counsel or vindicate the underlying right, in that case the Fifth Amendment right against self-incrimination. *State v. Robinson*, 427 N.W.2d 217 (Minn.1988) (holding that police failure to provide defendant telephone to contact attorney after defendant stated "maybe" he should talk to attorney or alternatively to cease questioning, violated right to counsel and required suppression of statement). We recognize that chemical testing in a DWI proceeding is not self-incrimination and does not trigger Fifth Amendment protections. *See State v. Lopez*, 538 N.W.2d 705, 707 (Minn.App.1995) (implied consent advisory is not interrogation for purposes of privilege against self-incrimination). Nevertheless, the underlying principle of *Robinson* applies. When appellant expressed an interest in consulting with an attorney, officers were required either to vindicate the underlying right by providing a telephone and a reasonable opportunity to consult with an attorney or clarify appellant's request. *Id.; accord Parsons*, 488 N.W.2d at 503; *Schultz*, 447 N.W.2d at 17, 19.

The *Friedman* right to counsel is limited by "the evanescent nature of the evidence in DWI cases" and "requires that the accused be given a limited amount of time in which to contact counsel." *Friedman*, 473 N.W.2d at 835. Courts must weigh the following competing factors to determine the reasonableness of a driver's request for counsel: (1) the importance to the driver of the decision to submit to testing; (2) the purpose of the right to counsel, which is to protect lay persons who lack skill and knowledge to defend themselves; (3) the driver's rights, which should not unreasonably interfere with police ability to gather evanescent evidence; (4) the legislative intent to coerce drivers into taking the test; (5) the liberal interpretation of the implied consent law in favor of the public interest; and (6) the need to return police to the streets to serve the public. *Parsons*, 488 N.W.2d at 502 (allowing driver 40 minutes to access telephone and consult attorney vindicated right). In rescinding the revocation of appellant's license the district court applied the totality of these circumstances and found that the time that had elapsed from appellant's initial waiver to his later change of heart was still a reasonable amount of time. This finding is undisputed as part of the stipulated record underlying this appeal. *See State v. Lothenbach* 296 N.W.2d 854, 857 (Minn.1980) (defendant wishing to preserve constitutional issue for appeal may waive right to jury trial then stipulate to prosecution's case). Under the facts of this case, appellant's later request to consult with counsel was reasonable and officers violated appellant's right to counsel by failing to make a telephone available. *Friedman*, 473 N.W.2d at 835. Alternatively, even if appellant's request was ambiguous, police were required to either clarify the request or vindicate the underlying right. *Robinson*, 427 N.W.2d at 223.

When a driver is read the implied consent advisory, Intoxilyzer test results obtained in violation of a driver's *Friedman* right to counsel must be suppressed as evidence in a subsequent DWI proceeding. *State v. Stradcutter*, 568 N.W.2d 545, 548 (Minn.App.1997) (distinguishing cases where suppression was not required, and cases involving urine or blood tests as opposed to Intoxilyzer tests); *see also State v. Karau*, 496 N.W.2d 416, 418–19 (Minn.App.1993) (holding suppression of Intoxilyzer test results required where police violated right to counsel by refusing to allow driver to call parents to obtain name of their attorney). Because officers violated appellant's *Friedman* right to counsel, his Intoxilyzer test results must be suppressed.

**Reversed and remanded.**